**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELIZABETH S. JOHNSON,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KILOLO KIJAKAZI,[1]** | : | **No. 20-1811** |
| **Acting Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

### MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                    **4/13/2022**

Plaintiff, Elizabeth S. Johnson, filed this action pursuant to 42 U.S.C. § 405(g) seeking

review of the Commissioner of the Social Security Administration's decision denying her claim

for disability insurance benefits (DIB) under Title II of the Social Security Act.  This matter is

before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's

request for review is **DENIED**.

### I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on January 14, 2017, alleging disability

beginning February 5, 2013.  (R. 10).  Plaintiff's application was initially denied on March 31,

2017, and she requested a hearing before an Administrative Law Judge (ALJ).  *Id.*  The

administrative hearing occurred on January 4, 2019, via video conference.  (R. 10, 30–62).

Plaintiff, represented by counsel, appeared and testified at the hearing, as did an impartial

vocational expert (VE).  *Id.*  On February 6, 2019, the ALJ issued a decision denying benefits

---

[1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi has been
substituted for Andrew Saul as the Defendant in this case.

under the Act.  (R. 7–24).  Plaintiff requested review of the decision, and the Appeals Council

denied her request on March 3, 2020, making the ALJ's decision the final decision of the

Commissioner.  (R. 1–6).

Plaintiff filed a complaint in this Court on April 7, 2020.  (Compl., ECF No. 1).  On April

8, 2020, the parties consented to my jurisdiction in this matter.  (ECF No. 4).  On August 6, 2021,

Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s Br., ECF

No. 23).  On September 7, 2021, the Commissioner filed a Response.  (Resp., ECF No. 24).

Plaintiff did not file a reply.

## II.      FACTUAL BACKGROUND

The Court has reviewed the administrative record in its entirety and summarizes here the

evidence relevant to the instant request for review.

Plaintiff was born on February 29, 1984, making her thirty-three years old as of her date

last insured.  (R. 19).  Plaintiff has at least a high school education and has past relevant work as

a nurse assistant.  (R. 18).

### A.      Medical Evidence

Plaintiff underwent anterior lumbar fusion surgery in 2013 but suffered complications

from the hardware, which had to be replaced.  (R. 378).  After recovering from this surgery,

Plaintiff began treatment at Penn State Hershey Milton S. Hershey Medical Center.  At a visit on

August 19, 2013, Plaintiff reported lumbar back pain, but noted that her pain and motor function

in her legs had improved.  (R. 378).  She ambulated with an antalgic gait but showed otherwise

normal results on physical examination.  (R. 379).  During a physical examination on April 3,

2014, Plaintiff reported her pain as a seven out of ten, although the physician noted she was in no

apparent distress.  (R. 334).  Plaintiff's strength was 5/5, and her sensation was intact to light

touch.  *Id.*  Her gait was guarded towards her left leg, and she had some tenderness to palpation of her lumbar back.  *Id.*  She had limited range of motion with flexion and extension but full range of motion with rotation, and displayed a negative straight leg raise test.  *Id.*

In May of 2015, Plaintiff visited her treating physician Dr. Knaub and reported persistent low back pain and pain in her right lower extremity, but also reported being up and about and active during the day.  (R. 340).  She displayed normal strength and sensation of her bilateral lower extremities on physical examination.  *Id.*  Dr. Knaub discussed with Plaintiff that "some people just do not improve" after her type of surgery, and expressed that "she is unfortunately one of those people."  *Id.*  Dr. Knaub found that Plaintiff could do whatever she wanted from an activities perspective, including getting back into yoga, going to the gym, and doing core strengthening exercises.  *Id.*  Plaintiff visited Dr. Knaub again on May 5, 2016, where she reported continued low back pain and pain in her right posterior buttock and thigh.  (R. 396).  On physical examination, she was diffusely tender to palpation across the lumbosacral junction, with no motor deficits in her lower extremities and intact sensation to light touch.  *Id.*  She had no pathologic reflexes in her lower extremities.  *Id.*

### 1.      Consultative Examiner Dr. Ziba Monfared

On March 21, 2017, consultative examiner Ziba Monfared, M.D., conducted a physical examination of Plaintiff.  (R. 406–09).  During the examination, Plaintiff appeared to be in no acute distress, her gait was normal, and she could walk on heels and toes without difficulty.  (R. 407).  Dr. Monfared noted Plaintiff's squat was 50% due to "suboptimal effort."  *Id.*  Plaintiff's stance was normal and she used no assistive devices, needed no help changing for the exam or getting on and off the exam table, and was able to rise from her chair without difficulty.  *Id.*  Plaintiff displayed 5/5 strength in the upper and lower extremities and 5/5 grip strength bilaterally, and showed a negative straight leg raise bilaterally both seated and supine.  (R. 408).

Dr. Monfared diagnosed Plaintiff with lumbar pain without radiculitis, and noted her prognosis as "good."  *Id.*

Dr. Monfared also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical).  (R. 410–19).  Dr. Monfared assigned Plaintiff no restrictions in lifting or carrying, and found that she could sit, stand, and walk for up to eight hours at one time without interruption.  (R. 411).  Dr. Monfared also assigned Plaintiff no restrictions in her use of hands and feet, and assigned no restrictions in postural activities such as climbing stairs, balancing, stooping, and kneeling.  (R. 412–13).  Dr. Monfared did not assign any restrictions regarding environmental conditions, and found Plaintiff capable of all of the listed activities such as shopping, traveling without assistance, and using public transportation.  (R. 414–15).

### 2. State Agency Consultant Dr. Catherine Smith

On March 31, 2017, state agency consultant Catherine Smith, M.D. conducted a review of the medical record and completed a Physical Residual Functional Capacity Assessment.  (R. 70–72).  Dr. Smith found Plaintiff could lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently.  (R. 71).  She found Plaintiff could stand and/or walk for about six hours in an eight-hour workday, and could sit for the same amount of time.  *Id.*  Dr. Smith found Plaintiff unlimited in her ability to push and pull, aside from her restrictions in lifting and carrying.  *Id.*  Dr. Smith found Plaintiff could never climb ladders, ropes, or scaffolds, and could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl.  *Id.*  Dr. Smith also found Plaintiff should avoid concentrated exposure to extreme cold, wetness, and hazards such as machinery or heights.  (R. 72).

### 3. Treating Physician Dr. Mark A. Knaub

On March 5, 2018, Plaintiff's treating physician Mark A. Knaub, M.D. completed a Medical Source Statement about what Plaintiff can still do despite her impairments.  (R. 426–

32).  Dr. Knaub found that Plaintiff's pain was frequently severe enough to interfere with her attention and concentration, and found her moderately limited in her ability to deal with work stress.  (R. 427).  Dr. Knaub found Plaintiff could sit continuously for up to one hour before alternating postures by walking about, and that she could sit for two hours cumulatively during an eight-hour workday.  (R. 428).  He found Plaintiff could stand or walk continuously for one hour before needing to lie down, and found that she could stand or walk for four hours cumulatively during an eight-hour workday.  (R. 429).  Dr. Knaub found Plaintiff would need to rest lying down during unscheduled breaks in addition to the regular breaks in an eight-hour workday, and that she would need to rest for one hour per day.  (R. 429–30).  Dr. Knaub found Plaintiff could occasionally lift up to ten pounds, and could never lift eleven pounds or more.  (R. 430).  He found Plaintiff capable of constant handling and fingering, frequent forward flexion of the neck, occasional rotation of the neck and repetitive use of hands, and rare or no balancing, stooping, or backward neck flexion.  (R. 430–31).  Dr. Knaub estimated that Plaintiff was likely to be absent from work more than three times a month as a result of her impairments.  (R. 432).

**B.    Non-Medical Evidence**

The record also contains non-medical evidence.  On February 14, 2017, Plaintiff completed an Adult Function Report.  (R. 264–71).  Plaintiff reported that her failed back fusion surgery caused her numbness going down her right leg, which sometimes caused her to fall while walking.  (R. 271).  She reported that sometimes the pain is so severe that she stays in bed all day, and that she can no longer lift, bend, or walk for an extended period of time.  *Id.*  Regarding her daily activities, Plaintiff stated that she takes care of her children and drops them off at school before spending the rest of the day alternating between lying in bed and sitting on the sofa or a chair.  (R. 270).  She stated that she often has trouble finding a comfortable position to sleep in, and that she is able to groom herself but has trouble shaving her legs, which her boyfriend

helps her with.  *Id.*  Plaintiff stated that she prepares her own meals but cannot use heavy pots and pans, and that she daily loads the top rows of the dishwasher but not the bottom because she cannot bend down.  (R. 269).  Plaintiff stated that she can drive and go out shopping, although she never goes unaccompanied, and that she can manage her own money.  (R. 268).  Plaintiff listed her hobbies as talking to friends and family, watching TV, using social media, and watching her children play.  (R. 267).  Regarding her abilities, Plaintiff stated that she cannot lift more than ten pounds and that she avoids having to squat or kneel, and that she can normally walk for ten to fifteen minutes before she needs a break.  (R. 266).  She reported that she had stopped taking pain medications because she felt they were "only working as a bandaid," and she did not want to become addicted to them.  (R. 264).

Plaintiff also testified at the administrative hearing.  (R. 30–62).  Plaintiff stated that she lives with her fiancé and her three children.  (R. 36).  She testified that from 2007 to 2011 she worked as a nurse assistant at a nursing home, but that she could not continue to work there after her doctor imposed a ten-pound weight restriction following her back surgery.  (R. 37–40).  Regarding her physical limitations, Plaintiff testified that she suffered from a tremendous amount of back pain that radiated into her right leg.  (R. 43).  She stated that the pain caused numbness in her leg and would occasionally cause her to fall.  *Id.*  On days where she felt particularly unsteady, she testified that she tended not to move around and would stay in bed.  (R. 43–44).  Plaintiff stated that she would spend most of her day either lying down or sitting, and that she would need to change positions every one-half to one hour.  (R. 48).  She testified that she could stand for up to one-half to one hour at a time, but standing for longer could cause her spasms and tightness in her back.  (R. 49).  She also testified that her fiancé and family members would help her take care of her children, particularly with any lifting.  (R. 46–47).  Plaintiff stated that she could do laundry, do dishes, and vacuum, but could not reach the bottom of her washer or

6

dishwasher.  (R. 50).  Regarding medications, Plaintiff stated that she was not taking any medication at the time of the hearing due to her recent pregnancy, but that she planned to re-start Flexeril for her muscle spasms.  (R. 44).  She testified that she did not want to become addicted to pain medications, so she treated her pain by lying down, taking warm showers, and using a heating pad.  *Id.*  Regarding treatment in general, Plaintiff testified that she had not seen her primary physician, Dr. Knaub, in two years, because he told her there was nothing more he could do for her condition beyond pain management.  (R. 52).  Plaintiff also testified that she had recently finished undergoing physical therapy, which had helped with her knee and hip.  (R. 45).

## III.    LEGAL STANDARD

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If [she] is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits [her] physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform [her] past work.  If the claimant cannot perform [her] past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 404.1520.  The claimant

bears the burden of establishing steps one through four, and then the burden shifts to the

Commissioner at step five to establish that the claimant is capable of performing other jobs in the

national economy, in light of her age, education, work experience and residual functional

capacity.[2] *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

       Judicial review of a final decision of the Commissioner is limited.  A district court is

bound by the factual findings of the Commissioner if they are supported by substantial evidence

and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999).  Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a

reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118

(3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the

decision of the ALJ will not be overruled as long as there is substantial evidence to support it.

*Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The court has plenary review of legal

issues.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).


## IV.    ALJ'S DECISION

       In his decision, the ALJ used the five-step sequential analysis and made the following

findings:

    1.    The claimant last met the insured status requirements of the Social Security Act

        on December 31, 2017.

    2.    The claimant did not engage in substantial gainful activity during the period from

        her alleged onset date of February 5, 2013 through her date last insured of

---

    [2]  Residual functional capacity ("RFC") is defined as "that which an individual is still able to do despite the limitations caused by [his impairments]."  20 C.F.R. § 404.1545(a); *see also Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001).

December 31, 2017.

3.      Through the date last insured, the claimant had the following severe impairment: degenerative disc disease.

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with additional restrictions.  The claimant can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently; can stand and walk for 6 hours of an 8-hour workday with the regular breaks typically allowed and requires the option to sit at the work station for 10 minutes and continue working after 30 minutes of standing or walking; she can sit for 6 hours of an 8-hour workday with the regular breaks typically allowed and requires the option to stand for 5 minutes after 30 minutes of sitting; she can occasionally stoop, climb ramps and stairs, balance, kneel, crawl, and crouch, and can never climb ladders, ropes, or scaffolds.  She must avoid concentrated exposure to extreme cold, wetness, and vibrations, and must never be exposed to unprotected heights or moving, unprotected machinery.

6.      Through the date last insured, the claimant was unable to perform any past relevant work.

7.      The claimant was born on February 29, 1984, and was 33 years old, which is defined as a younger individual age 18-49, on the date last insured.

9

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from February 5, 2013, the alleged onset date, through December 31, 2017, the date last insured.

(R. 13–20).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 20).


## V.      DISCUSSION

In her Request for Review, Plaintiff argues that the ALJ erred by: (1) failing to afford treating physician Dr. Knaub's opinion controlling weight; and (2) disregarding the VE's testimony that there would be no jobs for Plaintiff if she were to be off-task for at least twenty percent of the work day and would need additional unscheduled breaks beyond the regular breaks.  (Pl.'s Br., ECF No. 23, at 2–8).  The Commissioner responds that the ALJ properly found Dr. Knaub's opinion to be inconsistent with the rest of the medical evidence.  (Resp., ECF No. 24).  I agree with the Commissioner.

### A.    Evaluation of Medical Opinion Evidence

First, Plaintiff argues that the ALJ erred by failing to assign controlling weight to the medical opinion of Plaintiff's treating physician Dr. Knaub.  (Pl.'s Br., ECF No. 23, at 2–8).  The applicable Social Security regulations[3] direct an ALJ to consider a number of factors in deciding what weight to accord a medical opinion.  These factors include: (1) the examining relationship; (2) the nature and extent, and length of a treating relationship; (3) the supporting explanations provided for the opinion; (4) the consistency of the opinion with the records as a whole; (5) the medical source's specialization; and (6) any other relevant factors.  20 C.F.R. § 404.1527(c)(1)-(6).  Treating medical source opinions are generally entitled to controlling weight, or at least substantial weight.  *See Fargnoli*, 247 F. 3d at 43.  However, the ALJ may assign a treating physician's opinion more or less weight depending upon the extent to which the physician's assessment is supported by the record.  *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999).  When faced with conflicting medical opinions, an ALJ may choose who to credit but "must consider all the evidence and give some reason for discounting the evidence he rejects."  *Becker v. Comm'r of Soc. Sec. Admin.*, 403 F. App'x 679, 686 (3d Cir. 2010); *Plummer*, 186 F.3d at 429. The ALJ's explanation "must be sufficient enough to permit the court to conduct a meaningful review."  *Burnett*, 220 F.3d at 119-20.

Here, as the ALJ noted, Plaintiff's treating physician Dr. Knaub opined that she could occasionally lift and carry ten pounds, could sit for two hours in an eight-hour day for one hour at a time, could stand or walk for four hours in an eight-hour day for one hour at a time,[4] and that

---

[3]   The regulations providing for the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. See 20 C.F.R. § 404.1520c (prescribing rules for new decisions which apply to claims filed before, and after, March 27, 2017). These amended regulations are not applicable to this case.

[4]   In his description of Dr. Knaub's opinion, the ALJ mistakenly wrote that Dr. Knaub had opined that Plaintiff could only stand or walk for less than fifteen minutes at a time.  (R. 17).

she must rest for one hour total in an eight-hour day.  (R. 17, 428).  Dr. Knaub opined that

Plaintiff must be able to alternate sitting and walking, could never balance, stoop, or look

upward, would be limited to occasional repetitive use of her hands bilaterally, would have

moderate limitations in dealing with work stress and would be absent from work more than three

days per month.  *Id.*  The ALJ assigned Dr. Knaub's opinion limited weight, explaining:

> Dr. Knaub was the claimant's treating physician from 2013
> to 2016 and has reportedly not treated her since.  His opinions are
> not supported by his own treatment record, suggesting the claimant
> could essentially return to normal functioning, including going to
> the gym and doing yoga.  Furthermore, his opinions are not
> consistent with a more recent record documenting a normal physical
> examination, namely the consultative medical examination in March
> 2017, nor are they consistent with the claimant's reports and
> testimony at the hearing.  For instance, the claimant reported she
> could stand or walk for 30 to 60 minutes at a time before needing to
> change positions.  There is nothing in the record to support the
> manipulative limitations nor the limitations regarding her ability to
> move or rotate her neck.  For these reasons, I accord limited weight
> to the opinion of Dr. Knaub.

(R. 17) (citations omitted).

Plaintiff argues that the ALJ should have assigned Dr. Knaub's opinion controlling weight

because he is Plaintiff's treating physician and because his opinion is consistent with his

treatment records.  As evidence of this, Plaintiff points specifically to the August 2016 visit

where Dr. Knaub noted that Plaintiff has never had symptomatic relief and that further surgery

would have only a low probability of improving her symptoms.  (Pl.'s Br., ECF No. 23, at 5).

However, Plaintiff cannot point to any other evidence in the record that is consistent with the

extremely restrictive limitations imposed by Dr. Knaub.  As the ALJ noted, aside from her initial

lumbar fusion surgery, Plaintiff has received only conservative treatment for her back pain, and

---

However, Plaintiff does not raise any challenge based on this error, and I find that it does not
impact the ALJ's reasoning that Dr. Knaub's opinion is unsupported by Plaintiff's generally
conservative treatment history.  Accordingly, this error is harmless, and does not require remand.

at the time of the administrative hearing was not undergoing any treatment at all.  In April of 2014 Plaintiff's physicians opined that physical therapy was no longer necessary and recommended she lower her doses of pain medication; by the time of the administrative hearing, Plaintiff was not taking any medication for her pain and only planned on taking Flexeril for muscle spasms.  (R. 44, 334).  Additionally, Dr. Knaub's restrictive limitations are plainly inconsistent with his own treatment notes, which document that in August 2016, he told Plaintiff she could engage in any activities she wished, including yoga, going to the gym, and doing core strengthening exercises.  (R. 340).  Indeed, Plaintiff testified that she did engage in many activities of daily living, including caring for her three children, doing laundry, washing dishes, preparing meals, and going shopping.  (R. 18, 35, 49, 340, 406–07).  In terms of the objective evidence, Plaintiff frequently displayed normal strength, range of motion, and sensation on physical examination, despite sometimes showing a slightly antalgic gait.  (R. 334, 340, 378–79, 406–09).  And as the ALJ correctly noted, there is no evidence in the record suggesting any limitations in Plaintiff's neck movement or use of her hands that would support Dr. Knaub's findings in these areas.  (R. 17).

Because Dr. Knaub's opinion is inconsistent with the rest of the medical record, the ALJ did not err in declining to give it controlling weight; therefore, substantial evidence supports the ALJ's RFC determination.  Accordingly, remand on this ground is denied.

**B.    VE Testimony**

Plaintiff also argues that the ALJ erred by disregarding the VE's testimony that there would be no jobs for Plaintiff if she were to be off task for at least twenty percent of the work day and would need additional unscheduled breaks beyond the regular breaks.  (Pl.'s Br., ECF No. 23, at 6–7).  In steps four and five of a disability determination, "a [VE] . . . may offer expert opinion testimony in response to a hypothetical question about whether a person with the

13

physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 416.960(b)(2).  The purpose of posing a hypothetical is to determine whether a claimant has the RFC to perform either the claimant's previous work or any work that exists in the national economy.  *Ramirez*, 372 F.3d at 549.  The ALJ's hypothetical "must accurately convey to the [VE] all of a claimant's credibly established limitations" in order to rely upon the VE's testimony as substantial evidence. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

At the administrative hearing, the ALJ posed multiple hypothetical questions to the VE; the first asked whether there were jobs in the national economy for a person at the light exertional level with the limitations assessed in the ALJ's RFC, and the second dealt with a claimant at the sedentary level.  (R. 55–58).  The VE answered that jobs existed in the national economy for both of those hypothetical individuals.  *Id.*  Next, the ALJ asked the VE whether jobs existed in the national economy for an individual at the light or sedentary level who would be off task for twenty percent of an eight-hour workday, or would need additional unscheduled breaks beyond the regular breaks.  (R. 59).  The VE answered that these restrictions would be incompatible with competitive employment.  *Id.*

Plaintiff argues that the ALJ should have followed the VE's response to this last hypothetical and found Plaintiff to be disabled.  However, that hypothetical was based on limitations assessed by Dr. Knaub.  (R. 429–30, 432).  As discussed above, the ALJ did not ultimately find those limitations to be credible.  Therefore, the ALJ was not required to follow the VE's testimony accounting for these limitations.

Accordingly, remand on this ground is denied.

## VI.    CONCLUSION

For the reasons set forth above, I find that the ALJ's decision is supported by substantial evidence.  Accordingly, Plaintiff's request for review is **DENIED**.


BY THE COURT:


  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge

15